IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

United States of America,                    *
      Plaintiff,

                                       *

vs.
                                       *

54,440.00 in United States Funds,            CASE NO. 4:11-CV-143 (CDL)
      First-Named Defendant            *
      Property,

                                       *

Derone Jackson,
      Claimant.                        *

_____

## ORDER

Based on four controlled purchases of cocaine by a confidential informant, deputy sheriffs obtained search warrants for the homes of two brothers and their mother.  At the mother's home, the deputies located a safe that contained three twenty-dollar bills and a one-hundred-dollar bill that had been used in the controlled purchases.  In addition to the traced $160 in currency, the deputies found an additional $57,440.00 in cash in the safe.  Although no one has been indicted for the underlying criminal activity that gave rise to the search of the safe, the United States wants the money, and it has filed this civil forfeiture action to get it.  One of the brothers, who was not implicated in the alleged criminal activity, now claims the cash is his.  After a

bench trial, the Court finds in favor of the United States based upon the following findings of fact and conclusions of law.

## FINDINGS OF FACT

### 1.

Former Muscogee County Sheriff's Office ("Sheriff's Office") Investigator Findley received numerous tips from various sources, including confidential informants, that Terrence Jackson a/k/a "Bear" and his brother, Deryk Jackson a/k/a "Shorty," were selling powder and crack cocaine from their residences on Rice Street and Cornell Avenue. Investigator Findley was also told that Deryk was frequently seen going back and forth between his home (2550 Cornell Avenue) and his mother's home next door (2556 Cornell Avenue) during drug transactions.

### 2.

Based on this information, Investigator Findley arranged a series of controlled purchases of narcotics from Terrence and Deryk using informants over a period of two months.

### 3.

In the first transaction, Investigator Findley and his colleague, Investigator Batastini, observed the informants exchange $100.00 of photocopied Sheriff's Office funds for 1.1 grams of crack cocaine from Deryk

2

at 2550 Cornell Avenue and 2556 Cornell Avenue.  The informants also exchanged $50.00 of photocopied Sheriff's Office funds for 0.6 grams of powder cocaine from Terrence at 2517 Rice Street.

4.

In the second transaction, Investigator Findley observed the informants exchange $120.00 of photocopied Sheriff's Office funds for 0.6 grams of crack cocaine and 0.6 grams of powder cocaine from Deryk and Terrence at 2550 Cornell Avenue and 2556 Cornell Avenue.

5.

In the third transaction, Investigator Findley observed the informants enter Terrence's residence at 2517 Rice Street and return with 0.6 grams of crack cocaine and 0.6 grams of powder cocaine.  The informants exchanged $100.00 of photocopied Sheriff's Office funds for the narcotics.

6.

The final controlled purchase occurred on April 14, 2011 around 3:30 p.m.  Investigators Findley and Batastini observed the informants exchange $100.00 of photocopied Sheriff's Office funds for 1.1 grams of crack cocaine from Deryk at 2550 Cornell Avenue.

7.

A criminal history record check revealed that both Terrence and Deryk have prior arrests and are convicted felons.

8.

Based on the information gathered during the drug investigation and surveillance, Investigator Findley obtained search warrants for 2517 Rice Street, 2550 Cornell Avenue, and 2556 Cornell Avenue.  All residences are located in Columbus, Muscogee County, Georgia.

9.

On April 15, 2011, at approximately 3:00 p.m., members of the Metro Narcotics Task Force executed a search warrant at 2517 Rice Street, the home of Terrence Jackson.  During the search, Investigator Batastini and other agents found approximately 32.2 grams of cocaine, approximately 66.8 grams of marijuana, a scale, several guns, and ammunition.  Investigator Batastini, who has experience quantifying the street value of narcotics in the Columbus market, testified that the narcotics seized at 2517 Rice Street and on Terrence's person had a value of approximately $4,100.00.

10.

Concurrent with the Rice Street search, Sheriff's Office deputies and investigators executed a search warrant at 2550 Cornell Avenue, the home of

Deryk Jackson.  Investigator Findley and others searched the residence and Sheriff's officers recovered approximately 12.3 grams of crack cocaine, razor blades, 25.5 Xanax pills, a video surveillance system to monitor the exterior of the residence, and a Beretta Blackhawk holster.

11.

Shortly thereafter, law enforcement officers executed a third search warrant at 2556 Cornell Avenue, the home of Barbara L. Johnson.  Ms. Johnson is the mother of Terrence, Deryk, and Claimant Derone Jackson.  Technician Stinson conducted an open air search of the residence using a dog ("K-9") trained to detect the odor of certain narcotics including cocaine, crack cocaine, methamphetamine, marijuana, and heroin.  The only place in the residence that the K-9 gave a positive alert for the presence of narcotics was on two safes in the right rear bedroom closet.

12.

Investigator Findley arrived at Ms. Johnson's residence as Technician Stinson conducted the open air search. After the K-9 alerted on the safes, Investigator Findley asked Ms. Johnson for the combination to the safes to avoid unnecessarily destroying the safes.  Ms. Johnson was unable to provide the combination and stated that the safes belonged to her son Deryk. Investigator Findley asked Deryk  for the combination, which he did not

provide.  Agents then used a crow bar to open the safes, and discovered a large amount of U.S. currency, assorted jewelry, and bags of wheat pennies and buffalo nickels.  Agents found ten guns and several boxes of ammunition in the same residence with the large amount of U.S. currency.

13.

Terrence was arrested and charged with trafficking in cocaine, possession of marijuana with intent to distribute, and four counts of possession of a firearm by a convicted felon.  Deryk was arrested and charged with two counts of sale of cocaine and possession of cocaine with intent to distribute.

14.

The arrest warrants remain pending against Terrence and Deryk with the Muscogee County Superior Court, and neither Terrence nor Deryk have been indicted.

15.

The U.S. currency found in the safes was seized and counted.  It totaled $57,600.00.

16.

On April 19, 2011, Lt. Sikes and Investigator Findley of the Sheriff's Office sorted through the $57,600.00 seized from 2556 Cornell Avenue to search for funds that had previously been photocopied by the Sheriff's Office

for use in the controlled transactions.   Investigator Findley found four photocopied bills in the $57,600.00: a $100.00 bill that was used by informants to purchase crack cocaine from Deryk on April 14, 2011 and three $20.00 bills that were used in a controlled purchase of crack cocaine from Deryk at 2550 Cornell Avenue and 2556 Cornell Avenue on March 2, 2011.  The four previously photocopied bills, totaling $160.00, were marked, bagged, sealed, and placed in evidence.  The Sheriff's Office turned the remaining $57,440.00 over to the United States Marshals Service.

17.

On September 29, 2011, the United States filed a Verified Complaint for Forfeiture against the First-Named Defendant Property, $57,440.00, contending that it is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).  (ECF No. 1).  The First-Named Defendant Property was seized pursuant to a Warrant of Arrest In Rem by the United States Marshals Service.  (ECF No. 2).  The Government published notice of this forfeiture, as required by Rule G(4) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

18.

On October 19, 2011, Derone Jackson ("Claimant"), through his counsel of record, filed a timely Claim (ECF No. 6) asserting his interest in the

7

First-Named Defendant Property, as well as an Answer (ECF No. 7) to the Verified Complaint on October 28, 2011.

19.

A Declaration of Publication was filed on November 18, 2011, and no other claim has been filed on the First-Named Defendant Property. (ECF No. 9).

20.

On December 6, 2011, the Government filed a Motion to Stay the forfeiture proceedings based on Arrest Warrants issued by the Superior Court of Muscogee County against Claimant's brothers, Terrence and Deryk, charging them with possession of cocaine with intent to distribute and the sale of cocaine. (ECF No. 10). The Court granted the United States' Motion to Stay on December 15, 2011. (ECF No. 13). After some time, even though the charges against Terrence and Deryk Jackson remained pending, the United States filed a motion requesting that the Court lift the stay. (ECF No. 21). On May 1, 2013, the Court lifted the stay. (ECF No. 22). A bench trial was held on September 29, 2014.

21.

Claimant Derone Jackson, a painter and drywall installer, testified that he accumulated the $54,440.00 over a period of ten years, from approximately 2002 through April 15, 2011, the date the U.S. currency was seized by law

8

enforcement.   He introduced evidence of his income over various years, including numerous check stubs and 1099 tax returns from 2002 through 2007. He testified that he saved the majority of the First-Named Defendant Property from 2004 through 2007, when he worked as a subcontractor.   By 2006, Claimant estimated that he had accumulated $20,000.00 of the First-Named Defendant Property.

22.

Claimant explained that this money was his savings for retirement, and that he did not deposit it with a bank because he did not trust banks or Wall Street following the terrorist attacks of September 11, 2001.  But he apparently had no qualms about storing his life savings at his mother's house in a safe bought at Walmart that was small enough to be carried away by a single person.

23.

Claimant also testified that he was the only individual who had access to the safe.  But he had no believable explanation as to how the safe contained the $100.00 bill used in a controlled purchase of narcotics from Deryk on April 14, 2011, only 24 hours before the seizure on April 15, 2011. He maintained that he occasionally loaned money to his brothers, and that the traced money must have been currency they used to pay back their loans.  But this testimony cannot be reconciled with Claimant's other testimony

9

that he last accessed the safe three to four days prior to the seizure.  Claimant also denied any knowledge of his brothers' drug activity or the cache of weapons stored at his mother's home, despite allegedly having visited his mother once per week, and purporting to be close with his brothers.

24.

The evidence introduced at trial showed that from 2002 through 2011, Claimant was paid the gross sum of over $580,000.00, most of which was paid to him as a subcontractor, and thus he netted much less after paying for his products, supplies, and other expenses.  The bulk of this income was from the years preceding 2008 before the housing market crashed and Claimant's business dried up.  Of this $580,000.00, $408,000.00 was received prior to December 31, 2005.

25.

Although Claimant testified that the First-Named Defendant Property was accumulated from 2002 to 2011, and that he did not have difficulty paying his bills during this time, he acknowledged on cross-examination that he had filed for bankruptcy protection in the Middle District of Georgia Bankruptcy Court in 2001, 2003, and  2005.  On October 13, 2005, Claimant verified in his bankruptcy filings that he had no cash on hand.

26.

No witnesses were called to corroborate Claimant's claim to ownership of the currency.

## CONCLUSIONS OF
## LAW

The Government bears the initial burden of demonstrating by a preponderance of the evidence that the First-Named Defendant Property is subject to forfeiture.   18 U.S.C. § 983(c)(1).   Generally, when the Government seeks forfeiture of property used to commit a criminal offense, property used to facilitate the commission of a criminal offense, or property involved in the commission of a criminal offense, the Government must establish a substantial connection between the property and the offense.  *Id.* §983(c)(3).   For forfeitures arising from violations of the Controlled Substances Act, the Government may demonstrate that cash is subject to forfeiture by proving by a preponderance of the evidence that the cash was furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act, that the cash is traceable to such an exchange, or that the cash was used or intended to be used to facilitate any violation of the Controlled Substances Act. 21 U.S.C. § 881(a)(6).

The Court concludes that the Government proved by a preponderance of the evidence that the First-Named Defendant Property was subject to forfeiture because it was exchanged for controlled substances as prohibited by the Controlled Substances Act. *Id.* Although the Government must prove that there is a substantial connection between the defendant property and the criminal activity, *see* 18 U.S.C. § 983(c)(3), the Government is *not* required to show that the property was connected to a specific drug transaction. *United States v. $242,484,* 389 F.3d 1149, 1160 (11th Cir. 2004) (en banc). In this case, the Court finds this substantial connection based upon both direct and circumstantial evidence evaluated in light of the totality of the circumstances with "a common sense view to the realities of normal life." *Id.* (internal quotation marks omitted). Based on the evidence presented at trial, the Court finds that the cash found in the safe is subject to forfeiture. But this does not end the inquiry.

If the Government meets its burden of proving that the property is subject to forfeiture, an innocent owner's interest in that property may not be forfeited if the innocent owner establishes by a preponderance of the evidence that he is in fact an "innocent owner" as defined by the forfeiture statute. 18 U.S.C. § 983(d)(1). To be an "innocent owner," the claimant must obviously have an "*ownership* interest in the specific property sought to be forfeited." *Id.* § 983(d)(6)(A)(emphasis

added).  If the claimant establishes an ownership interest in the property, then he must prove that his ownership was innocent.  *See id.* §983(d)(2) and (3).

In this case, Derone, as the claimant innocent owner, was unable to prove ownership of the cash found in the safe.  The facts that lead the Court to this conclusion include the following: (i) investigation, surveillance, and the execution of search warrants at 2517 Rice Street, 2550 Cornell Avenue, and 2556 Cornell Avenue, which led, collectively, to the discovery and seizure of approximately 47 grams of powder and crack cocaine (with an approximate street value of $4,700.00), 67 grams of marijuana (with an approximate street value of $670.00), 25.5 Xanax pills, digital scales, a cache of firearms, 14 boxes of ammunition, razor blades, cut, and a video surveillance system; (ii) the large quantity of U.S. currency ($57,600.00) found inside the locked safe located at 2556 Cornell Avenue; (iii) the location of the large amount of U.S. currency in a separate but nearby residence from the residences being used for drug trafficking; (iv) a positive alert by a narcotics K-9 on the safes located at 2556 Cornell Avenue containing the First-Named Defendant Property; (v) the evidence of multiple bankruptcy filings by Claimant, which is inconsistent with the evidence of income Claimant tendered at trial; (vi) the discovery of "buy money" comingled with currency located in the safe; (vii) the absence of any other claimant to the currency, despite notice being

13

provided when the Complaint was filed nearly three years ago; and (viii) the lack of corroborating testimony from Claimant's family members concerning the purported financial calamity caused by the seizure of his life savings.   Unable to carry his burden of establishing himself as an "innocent owner," Derone's claim to the property that is subject to forfeiture fails.   And this ends the inquiry.  The cash shall be forfeited to the United States.

## OBITER DICTUM

While the absence of any underlying criminal indictment of Terrence or Deryk does not prevent the civil forfeiture here, it does create some pause. Even the most ardent law and order advocate would likely recognize the legitimate civil liberty concerns that arise from the federal government's taking of personal property as the fruit of a crime when neither the federal government nor any state has chosen to indict the alleged perpetrators for the underlying criminal activity.  But even the most passionate civil libertarian must concede that the forfeiture statutes enacted by Congress permit such aggressive pursuit of the fruit of theoretically indictable, yet not actually indicted, crimes.   Perhaps more importantly, any judge should know that the same Constitution that protects those civil liberties also constrains the Court from rewriting those forfeiture laws or purposely misconstruing the evidence to reach a particular result.  Regardless of one's personal view of the civil

forfeiture laws and the breadth of their reach, the evidence in this case under the current law requires today's outcome.

## CONCLUSION

The United States proved by a preponderance of the evidence that the First-Named Defendant Property constitutes proceeds traceable to an exchange for a controlled substance in violation of the Controlled Substances Act. Thus, the property is subject to forfeiture. Moreover, the sole Claimant in this case has failed to establish innocent ownership of the First-Named Defendant Property. Accordingly, the First-Named Defendant Property shall be forfeited to the United States.

IT IS SO ORDERED, this 15th day of October, 2014.

s/ Clay D. Land_____
CLAY D. LAND, CHIEF JUDGE
UNITED STATES DISTRICT COURT